FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM          INDEX NO. E2021010968
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 12/08/2021

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

DEMOND MEEKS,

Plaintiff,

-against-

THE CITY OF ROCHESTER, ALEXIS ORTIZ, TYLER
COUCH, "JOHN DOE POLICE OFFICERS 1-200" (names
and number of whom are unknown at present),

Defendants.

**SUMMONS**

Index No.: E2021010968

The basis of venue is:
Location of the incident

Plaintiff designates Monroe
County as the place of trial.

**To the above named Defendants:**

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your
answer, or, if the complaint is not served with this summons, to serve a notice of appearance
on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day
of service, where service is made by delivery upon you personally within the state, or, within 30
days after completion of service where service is made in any other manner. In case of your failure
to appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

DATED: New York, New York
         September 8, 2021

Yours, etc.,

ROTH & ROTH, LLP.
ELLIOT SHIELDS, ESQ.
Attorney for Plaintiff
192 Lexington Ave, Suite 802
New York, New York 10016
(212) 245-1020

EASTON THOMPSON
KASPEREK SHIFFRIN LLP
Donald Thompson
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290

RECEIVED
2021 DEC 15 A 11:47
CITY OF ROCHESTER
LAW DEPARTMENT

TO:
CITY OF ROCHESTER
CORPORATION COUNSEL
30 Church Street
Rochester, New York 14614

COUNTY OF MONROE
Monroe County Law Department
307 County Office Building
39 W. Main St.
Rochester, NY 14614

ALEXIS ORTIZ, TYLER COUCH
185 Exchange Blvd.
Rochester, NY 14614

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM          INDEX NO. E2021010968
NYSCEF DOC. NO. 1                                       RECEIVED NYSCEF: 12/08/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

DEMOND MEEKS,

                                        Plaintiff,

            -against-

THE CITY OF ROCHESTER, ALEXIS ORTIZ, TYLER
COUCH, "JOHN DOE POLICE OFFICERS 1-200" (names
and number of whom are unknown at present),

                                        Defendants.

INDEX NO.: E2021010968

**VERIFIED COMPLAINT**
**[JURY TRIAL DEMANDED]**

Plaintiff, by his attorneys, ROTH & ROTH, LLP and EASTON THOMPSON

KASPAREK SHIFFRIN LLP, complaining of the Defendants, respectfully allege as follows:

## I.     **PARTIES**

1.      Plaintiff DEMOND MEEKS (he/him) is a resident of the County of Monroe,

State of New York. MEEKS serves in the New York State Assembly from the 137th district.

2.      Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and

authorized under the laws of the State of New York. It is authorized by law to maintain a police

department, which acts as its agent in the area of law enforcement and for which it is ultimately

responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force

and the employment of police officers as said risks attach to the public consumers of the services

provided by the RPD.

3.      Defendant CITY OF ROCHESTER ("CITY") was and is a municipal corporation

duly organized and existing under and by virtue of the laws of the State of New York. Defendant

CITY maintains the City of Rochester Police Department, a duly authorized police department,

authorized to perform all functions of a police department. RPD acts as Defendant CITY's agent

and Defendant CITY assumes the risks incidental to the maintenance of a police department and the employment of police officers.

4.     ALEXIS ORTIZ, TYLER COUCH, "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS "1–10" (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Police Officers with the RPD. At all relevant times, these Defendants were acting within the scope of their employment with the CITY and RPD and under color of state law. They are sued in their individual capacities. John Doe RPD Officers are referred to collectively as "the RPD officers."

## II. JURISDICTION

5.     This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the Defendant, and/or Defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

6.     Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

7.     Plaintiff filed a timely Notice of Claim against the City in compliance with the Municipal Law § 50.

8.     The CITY waived a 50-h hearing.

9.     More than thirty (30) days have elapsed since service of said Notice of Claim were filed and the City has failed to pay or adjust the claim.

10.     This action is being brought within a year and 90 days of the event that gives rise to Plaintiff's causes of action under New York State law and Plaintiff has complied with all of the statutory prerequisites for bringing this action.

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM                    INDEX NO. E2021010968
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 12/08/2021

### III.  STATEMENT OF FACTS

11.     On December 18, 2020, a group of approximately 20 protesters held a demonstration at 87 Glasgow Street, Rochester, New York to object to the unjust eviction of a single mother and her three children who lived there in the middle of the winter during the pandemic.

12.     The location of the eviction, 87 Glasgow Street, Rochester, New York, is within the 137th Assembly District for which Assemblyman Meeks serves.

13.     When Assemblyman Meeks heard that the Rochester Police Department was attempting to evict his constituents—a single mother and her three children—he decided to go to the location to provide support and assistance.

14.     Assemblyman Meeks arrived in the vicinity of 87 Glasgow Street, at approximately 6:45 p.m.

15.     When he arrived, approximately 20 protesters were standing in the front yard at 87 Glasgow Street holding signs and chanting.

16.     Assemblyman Meeks never stepped onto the property at 87 Glasgow Street.

17.     When Assemblyman Meeks arrived, ORTIZ, COUCH and approximately 20 other RPD officers in full riot gear were assembled in the street in front of 87 Glasgow Street.

18.     As Assemblyman Meeks approached 87 Glasgow Street, he was video recording the RPD officers with his cellphone.

19.     Assemblyman Meeks filmed the officers from a safe distance of approximately 10 feet away, and never interfered with the officers—physically or otherwise.

20.     Suddenly, without warning or justification, ORTIZ and other RPD officers seized and falsely arrested Assemblyman Meeks, without reasonable or probable cause.

21.    Assemblyman Meeks complied with all of the officers' orders.

22.    At no time did Assemblyman Meeks resist arrest in any way.

23.    Nevertheless, ORTIZ repeatedly instructed Assemblyman Meeks to "stop resisting".

24.    ORTIZ and other officers then violently yanked Assemblyman Meeks' arms behind his back, causing him pain and injuries, without cause or justification.

25.    ORTIZ and other officers placed handcuffs upon Assemblyman Meeks' wrists in an unreasonably tight manner.

26.    Assemblyman Meeks repeatedly requested that ORTIZ and other officers loosen the handcuffs because they were too tight and causing him pain, but the officers refused to loosen the handcuffs.

27.    ORTIZ placed Assemblyman Meeks in the back of an RPD vehicle, where he was detained for approximately three hours.

28.    During the three hours he was detained in the police car, Assemblyman Meeks repeatedly asked that the officers loosen his handcuffs, but they refused.

29.    Eventually, after approximately three hours, ORTIZ and/or other officers transported Assemblyman Meeks to the North Clinton police station for arrest processing.

30.    While he was detained at the police station, ORTIZ fabricated official police paperwork to falsely charge Assemblyman Meeks with Obstruction of Governmental Administration in the Second Degree, Penal Law § 195.05.

31.    ORTIZ falsely claimed in the official police paperwork that Assemblyman Meeks "physically interfere[d]" with the RPD's attempt to execute the warrant.

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM                    INDEX NO. E2021010968

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 12/08/2021

32.     ORTIZ falsely claimed in the official police paperwork that Assemblyman Meeks "congregate[d] with multiple individuals and intentionally bar[red] access to 57 Glasgow St", preventing the RPD's attempt to execute the warrant.

33.     Videos of the incident demonstrate that ORTIZ's claims were false.

34.     The fabricated paperwork was forwarded to the District Attorney to initiate Assemblyman Meeks' malicious prosecution for violation of Penal Law § 195.05.

35.     All the false charges levied against Assemblyman Meeks were dismissed in their entirety on February 11, 2021.

36.     Upon information and belief, the charges against Assemblyman Meeks were dismissed because the police paperwork failed to allege all elements of Penal Law § 195.05, and because the videos demonstrated that ORTIZ's allegations in the police paperwork were false.

37.     Assemblyman Meeks did not violate Penal Law § 195.05, or any other crimes or violations that could be considered Obstruction of Governmental Administration. At no time did Assemblyman Meeks commit a crime or violation.

38.     At no time did Assemblyman Meeks commit any act that a reasonable and properly trained police officer could have believed provided them with reasonable or probable cause to seize and arrest him for violation of Penal Law § 195.05 or any other crime.

39.     Assemblyman Meeks was seized and arrested while he was filming police officers performing their duties in a public place.

40.     Assemblyman Meeks was seized and arrested in retaliation for filming RPD officers performing their duties in a public place.

41.     COUCH and other RPD officers failed to intervene to prevent ORTIZ's unlawful seizure and false arrest of Assemblyman Meeks.

INDEX NO. E2021010968
RECEIVED NYSCEF: 12/08/2021

42.     As a result of ORTIZ and the other officers yanking his hands behind his back, handcuffing him too tightly, and refusing to loosen the handcuffs, Assemblyman Meeks suffered extreme pain and serious injuries.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
**Unlawful Seizure / False Arrest**
***Pursuant to New York State Law***

43.     All preceding and subsequent paragraphs are incorporated by reference.

44.     ORTIZ and other RPD officers, handcuffed and arrested Plaintiff on December 18, 2020.

45.     The arrest was made in the absence of a warrant for the arrest.

46.     The arrest was made in the absence of probable cause for the arrest.

47.     The Defendant RPD officers arrested Plaintiff without having exigent circumstances for doing so.

48.     There was no other authority for the arrest of Plaintiff.

49.     Plaintiff was conscious of the arrest.

50.     Plaintiff did not consent to the arrest.

51.     The RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

52.     The Defendant RPD officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant City and the RPD, which are therefore responsible for their conduct.

53.     The Defendant City, as the employer of the individual RPD Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

54.    As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional

limits of all the lower Courts of the State of New York.

## SECOND CLAIM FOR RELIEF
### Unlawful Seizure / False Arrest
*Pursuant to 42 U.S.C. § 1983*

55.    All preceding and subsequent paragraphs are incorporated by reference.

56.    ORTIZ and the other RPD officers had no judicial warrant authorizing them to

seize Plaintiff on December 18, 2020.

57.    The RPD OFFICERS and other RPD officers seized Plaintiff, restricting his

freedom of movement, without privilege or lawful justification.

58.    Plaintiff was conscious of their confinements by Defendants.

59.    Plaintiff did not consent to being confined by Defendants.

60.    The RPD officers did not have reasonable or probable cause to seize, detain, or

arrest Plaintiff.

61.    No reasonable officer would have believed they had reasonable or probable cause

to seize, detain, or arrest Plaintiff.

62.    The RPD officers' actions were willful, malicious, oppressive, and/or reckless,

and was of such a nature that punitive damages should be imposed.

63.    As a result, Plaintiff sustained damages in an amount in excess of the

jurisdictional limits of all the lower Courts of the State of New York.

## THIRD CLAIM FOR RELIEF
### Evidence Fabrication / Denial Of Fair Trial
*Pursuant to 42 U.S.C. § 1983*

64.    All preceding and subsequent paragraphs are incorporated by reference.

65. ORTIZ deliberately fabricated information in police reports and other arrest paperwork on December 18, 2020 that they knew was likely to influence a jury's verdict, forwarded that fabricated evidence to prosecutors, and Plaintiff suffered a deprivation of life, liberty or property as a result.

66. ORTIZ's actions violated Plaintiff's rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, to due process of law and to a fair trial, and as such, they are liable to plaintiff under 42 U.S.C. § 1983, for compensatory and punitive damages.

67. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer economic injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, economic damages, legal expenses and damages to their reputation and standing within the community.

68. ORTIZ's actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

69. As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## FOURTH CLAIM FOR RELIEF
### Malicious Prosecution
### *Pursuant to New York State Law*

70. All preceding and subsequent paragraphs are incorporated by reference.

71. By the actions described above, ORTIZ and other RPD officers, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

72. By the actions described above, CITY and the RPD officers each violated good and accepted police practices.

INDEX NO. E2021010968

73.     On February 11, 2021, the prosecution terminated in Plaintiff's favor.

74.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

75.     ORTIZ and the RPD officers acted with actual malice.

76.     The CITY and RPD employed the RPD officers, who were at all times agents, servants, and employees acting within the scope of their employment with the CITY and the RPD, which are therefore responsible for their conduct.

77.     The CITY, as the employer of the individual RPD Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

78.     As a result of Defendants' impermissible conduct, Plaintiff was injured and harmed.

79.     ORTIZ and the other RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

80.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### FIFTH CLAIM FOR RELIEF
**Malicious Prosecution**
*Pursuant to 42 U.S.C. § 1983*

81. All preceding and subsequent paragraphs are incorporated by reference.

82.     ORTIZ and the other RPD Officers, acting individually and in concert, initiated the prosecution of Plaintiff, despite knowing that probable cause did not exist to arrest and prosecute him for any crime.

83.     False and fabricated evidence was given by the RPD officers to the District Attorney's Office.

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM                    INDEX NO. E2021010968

NYSCEF DOC. NO. 1                                                                    RECEIVED NYSCEF: 12/08/2021

84.     The RPD officers knew or were deliberately and recklessly indifferent to the truth that probable cause did not exist to arrest and prosecute Plaintiff.

85.     There was actual malice and an absence of probable cause for the criminal proceeding against Plaintiff and for each of the charges for which she was prosecuted.

86.     On February 11, 2021, the prosecution terminated in Plaintiff's favor.

87.     As a direct and proximate result of the RPD officers' actions, Plaintiff was wrongly prosecuted for approximately two months and suffered the other grievous and continuing injuries and damages as set forth above.

88.     ORTIZ'S and the other RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

89.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York

<u>**SIXTH CLAIM FOR RELIEF**</u>
**First Amendment Infringements, Including First Amendment Retaliation**
***Pursuant to 42 U.S.C. § 1983***

90.     All preceding and subsequent paragraphs are incorporated by reference.

91.     In committing the acts and omissions complained of herein, Defendants acted under color of state law—individually, in concert, and through a conspiracy—to deprive Plaintiff of the rights protected by the First Amendment to the United States Constitution.

92.     Defendants (a) retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, and (b) imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to subjecting Plaintiff to excessive force, in arresting and prosecuting plaintiff, in selectively enforcing laws

INDEX NO. E2021010968

RECEIVED NYSCEF: 12/08/2021

and regulations against Plaintiff, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

93.     Defendants engaged in those and other acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

94.     Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

95.     Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

96.     The unlawful conduct of the individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

97.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

<u>SEVENTH CLAIM FOR RELIEF</u>
**Failure To Intervene**
*Pursuant to 42 U.S.C. § 1983*
**(Against COUCH and RPD Officers)**

98.     All preceding and subsequent paragraphs are incorporated by reference.

99.     COUCH and the other RPD officers had an affirmative duty to intervene on Assemblyman Meeks' behalf to prevent the violation of his constitutional rights by the other Defendant RPD Officers.

100.    The individual Defendants failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so.

101.    As a result of the aforementioned conduct of the individual Defendants, Plaintiff's constitutional rights were violated.

102.    Defendant RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

103.    As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**EIGHTH CLAIM FOR RELIEF:**
*Violation of New York Right to Monitor Act*
*New York Civil Rights Law § 79-p*

104.    All preceding and subsequent paragraphs are incorporated by reference

105.    Prior to being assaulted, battered and arrested, Assemblyman Meeks was exercising his rights under New York Civil Rights Law § 79-p, the New Yorker's Right to Monitor Act, to record law enforcement activity and to maintain custody and control over the recordings he had taken.

106.    Prior to being assaulted, battered and falsely arrested, Assemblyman Meeks had not physically interfered with law enforcement activity or engaged in obstruction of governmental administration or other unlawful conduct.

107.    ORTIZ and other RPD officers assaulted, battered and falsely arrested Assemblyman Meeks, intentionally preventing him from further recording law enforcement activity.

108.    The RPD officers lacked reasonable or probable cause to stop, seize or arrest Assemblyman Meeks for obstruction of governmental administration or any other crime.

109.    The RPD Officers were at all times agents, servants, and employees acting under color of law and within the scope of their employment by the Defendant CITY and the RPD, which are therefore responsible for their conduct.

110. The Defendant CITY, as the employer of the individual RPD Officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

111. Defendant RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

112. As a result, Assemblyman Meeks sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### NINTH CLAIM FOR RELIEF:
#### Municipal Liability

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's First, Fourth and Fourteenth Amendment Rights*

113. All preceding and subsequent paragraphs are incorporated by reference

114. All of the wrongful acts or omissions complained of herein against Assemblyman Meeks were carried out by the individually named and unnamed RPD officers pursuant to: (a) formal policies, rules, and procedures of Defendant CITY; (b) actions and decisions by Defendant CITY's policymaking agents; (c) customs, practices, and usage of the RPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by CITY policymaking officials; (d) Defendant CITY's deliberate indifference to Plaintiff's rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the CITY's failures, and the failures of the other policymaking agents, to train, supervise, and discipline RPD officers, despite full knowledge of the their wrongful acts against Plaintiff, as described herein.

115. The City and RPD maintain an unlawful policy, practice and/or custom of RPD officers retaliating against individuals who are lawfully video recording them perform their duties in a public place.

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM                    CIVIL INDEX NO. E2021010968
NYSCEF DOC. NO. 1                                                RECEIVED NYSCEF: 12/08/2021

116.    The City and RPD maintain an interrelated unlawful policy, practice and custom of RPD officers making arrests in the absence of the commission of any crime by the person arrested, motivated by a desire to punish the arrestee for the arrestee's perceived failure to display the degree of deference or subservience demanded by the arresting officers.

117.    Such arrests are frequently referred to as **"contempt of cop"** arrests.

118.    In order to conceal the illegality of these arrests, the victim of the unlawful arrest is charged with a **"cover charge"**, usually a low-level crime which does not require a complaint, and whose elements can be established, for the purposes of a criminal complaint, by the officer's own perjured affidavit or testimony.

119.    RPD officers have a pattern and practice of charging one or more offenses as their favored cover charges: disorderly conduct, resisting arrest, or obstruction of governmental administration.

120.    The unlawful policy of retaliating against individuals who are lawfully video recording the RPD performing their duties in a public place can be inferred from the following incidents:

    a.  Emily Good was a victim of one such "contempt of cop" arrest on May 12, 2011. Ms. Good was standing on the front lawn of her home filming—from 10 to 15 feet away—RPD officers engaged in the traffic stop of a young Black man. RPD Officer Mario Masic noticed Ms. Good filming and ordered her back into her home, stating she seemed "anti-police" and he did not feel safe with her there. Ms. Good remained calm and stated she was only standing on her property and did not pose any threat. Masic responded that he'd had enough: "You know what? You're going to go to jail." He then trespassed

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 12/08/2021

onto Ms. Good's property, unlawfully seized and handcuffed her, and forcibly led her to a squad car while she pleaded for him to explain why she was being arrested. A video of the unlawful arrest, incorporated by reference herein, can be found here: https://tinyurl.com/yff34jaw. Ms. Good was charged with "obstructing governmental administration" but the charges were later dropped. Though RPD's internal view concluded Masic should not have arrested Ms. Good for recording the traffic stop, then-Police Chief James Sheppard praised Masic for maintaining his "professional demeanor" in effecting the illegal arrest.

b. On December 16, 2015, RPD Officer William Baker assaulted, battered and falsely arrested Shelise Colon in retaliation for her video recording Baker and RPD Officer Jason Kelly after they had stopped her boyfriend, Lawrence Barrett, on the sidewalk for no reason and pointed a TASER at him. The City settled the civil lawsuit brought by Colon and Barrett for $35,000.

c. In July 2016, RPD officers targeted and arrested two black journalists at a Black Lives Matter protest in downtown Rochester. Carlet Cleare and Justin Carter of WHAM-TV were both handcuffed and detained by police, even though Ms. Cleare was wearing a WHAM-TV shirt and they identified themselves as members of the press. Press colleagues who were there described RPD ignoring white reporters standing right next to Ms. Cleare and Mr. Carter and instead targeting the two Black journalists.

d. On May 27, 2018, at approximately 1:30 a.m., RPD Officer Michael Stephens assaulted, battered and falsely arrested Anthony Hall and Shamell Killings

when they were lawfully recording him assault and batter their friend Craig

Puritt on a public sidewalk on Monroe Avenue in the vicinity of Meigs Street.

The City settled the civil lawsuit brought by Hall, Killings and Puritt for

$175,000.

e.   On December 18, 2019, RPD Officers Dakota Vanbrederode and Ethan

Paszko assaulted, battered and falsely arrested Dynasty Buggs in retaliation

for her attempting to film them during a traffic stop. After Ms. Buggs pulled

over, Vanbrederode approached the driver's side and ordered Ms. Buggs to

exit the car without lawful justification. When Buggs objected and tried to

record what was happening on her phone, Vanbrederode grabbed her phone

and threw it. He then pepper sprayed her in the face while she was still in the

car. After, Vanbrederode forcibly removed Ms. Buggs from the car, placed

handcuffs on her wrists, and pepper sprayed her again after she was

handcuffed. Vanbrederode falsely charged Ms. Buggs with obstruction of

governmental administration; all charges were dropped at her first court

appearance.

f.   In June 2020, Tobias Massey was falsely arrested, assaulted and battered in

retaliation for recording RPD officers violently arresting a man in his front

yard. Mr. Massey was woken up at night by the sound of screaming from his

front yard, where three RPD officers were on top of a Black man, who was

crying that he could not breathe and did not want to die. Mr. Massey went

outside to record the event. When the RPD officers noticed he was recording,

they chased him into his home, wrestled him down, handcuffed and arrested

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM

NYSCEF DOC. NO. 1

INDEX NO. E2021010968

RECEIVED NYSCEF: 12/08/2021

him. Mr. Massey was taken to the emergency room because of injuries he sustained from the encounter, where the officers gave him an appearance ticket charging him with resisting arrest and obstructing governmental administration for filming the police. After reviewing the video, former Chief Singletary dropped the charges against Mr. Massey.

g.   Emily McIntyre was falsely arrested by RPD officer Stephen Boily and other RPD officers on August 2, 2020 at approximately 12:00 a.m. in the vicinity of East Avenue and Alexander Street in retaliation for filming an RPD officer who was arresting a Black man in front of a bar called Murphy's Law. The officers falsely charged her with a violation of the Mayor's unlawful curfew, even though she was not congregated with any other person, let alone five or more people as required to be arrested under the "curfew." All the false charges were dismissed in their entirety on January 19, 2021.

h.   At protests in the City of Rochester following the release of the video of RPD officers killing Daniel Prude, photojournalist Reynaldo DeGuzman was repeatedly targeted and shot with pepper balls and other chemical weapons in retaliation for video recording officers performing their duties in public. On September 3, 2020, RPD officers shot DeGuzman in the neck in retaliation for him filming RPD officers violently arrest another protester named Jamia McCuller. Thereafter, on September 4, 2020, while videorecording RPD officers respond to peaceful protesters on the Court Street Bridge, RPD officers repeatedly targeted him and shot his camera equipment, disabling his

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM          INDEX NO. E2021010968
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 12/08/2021

camera equipment and preventing him from filming and documenting the law

enforcement response to the protests for the remainder of the night.

    i.   Another woman named Devorah Chatman was also shot numerous times with

pepper balls by RPD officers on September 3, 2020 in retaliation for

attempting to video record RPD officers violently arrest Jamia McCuller.

    j.   On September 3, 2020, RPD officers targeted and shot *Democrat & Chronicle*

photographer Tina MacIntyre-Yee in the head as she was video recording

officers respond to protesters in the vicinity of the Public Safety Building. The

video of that incident, incorporated herein, is available at

https://tinyurl.com/2hy52d5d.

121.    Additionally, upon information and belief, there are numerous other cases that are

not listed that the City and RPD know about where RPD officers unlawfully retaliated against

people for lawfully filming them perform their official duties in public.

122.    Another quintessential example of a contempt-of-cop/cover charge false arrest is

detailed in another case settled by the City, *Redd* v. *City, et al.*, 15-CV-6049-DGL-JWF

(W.D.N.Y. 2014).

123.    In ***Redd***, on November 27, 2013, RPD Officer Eliud Rodriguez arrested

the 16-year-old plaintiff and two of his the Edison Tech Varsity Basketball

teammates[1] as they waited at the bus stop in downtown Rochester, NY, which was

designated by City of Rochester officials and employees as the bus stop for all

Rochester City School District sports teams. Officer Rodriguez arrested Mr. Redd

---

[1] Mr. Redd received $30,000 to settle his claims with the City of Rochester, and his two co-arrestees / teammates, Weathers and Carelock, accepted settlements in the amount of $10,000 prior to filing civil rights lawsuits in court.

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM          INDEX NO. E2021010968

NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 12/08/2021

and his two teammates in retaliation for their failure to adequately comply with his unlawful order to "move along" when the three student-athletes attempted to explain they were waiting for their school bus. Officer Rodriguez and other RPD officers lied in official police paperwork and charged Mr. Redd and his two teammates with Disorderly Conduct, despite knowing they lacked probable cause to do so. Approximately ten (10) days after the false arrest, the Monroe County District Attorney dropped all of the false criminal charges levied against Mr. Redd and his two teammates.

124.    As detailed in the complaint in *Redd* v. *City, et al.*, in the summer of 2014, the United States Department of Justice, including the Federal Bureau of Investigation (FBI) and the United States Attorneys' Office for the Western District of New York, conducted an investigation to determine whether federal criminal charges should be brought against RPD Officer Eliud Rodriguez for his unlawful conduct.

125.    Despite being aware of these cases, and paying at least hundreds of thousands of dollars to settle cases where RPD officers unlawfully retaliated against citizens for filming them perform their duties in public, the City and RPD apparently have not taken any actions to ensure that their officers are properly trained on the rights of people to film them perform their duties in public.

126.    Similarly, the City and RPD apparently have not taken any actions to ensure that RPD officers understand the law regarding probable cause to arrest an individual for the crimes of obstruction of governmental administration, disorderly conduct, harassment and other

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM          INDEX NO. E2021010968

NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 12/08/2021

common "cover charges" that are frequently levied against individuals, in the absence of probable cause to believe they actually committed any crime.

127.    Upon information and belief, Defendant CITY and the RPD have refused calls for disclosure of statistics concerning minor offenses such as the "cover charge" crimes.

128.    Upon information and belief, the "contempt of cop" and "cover charge" charges levied most regularly by Rochester Police Officers are disorderly conduct, resisting arrest, obstruction of governmental administration, trespass and harassment.

129.    Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, obstruction of governmental administration, trespass and harassment are relatively easy for police to levy in the absence of actual probable cause because they may arise out of nearly any police-civilian interaction.

130.    Upon information and belief, Defendant CITY has been, and continues to be, aware of the prevalence of the problem of officers of the RPD making baseless "contempt of cop" arrests, and bringing false "cover charges" against the arrestees, but has failed to take action to remedy the problem.

131.    Upon information and belief, to date the Defendant CITY has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by RPD Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, obstruction of governmental administration, trespass and harassment.

132.    Upon information and belief, to date the Defendant CITY has not implemented any particular or remedial training, oversight measures or policies designed or intended to curtail the longstanding and widespread practice of RPD

FILED: MONROE COUNTY CLERK 12/08/2021 12:23 PM          INDEX NO. E2021010968

NYSCEF DOC. NO. 1                                         RECEIVED NYSCEF: 12/08/2021

officers of retaliating against individuals for lawfully recording them perform their official duties in public places.

133.    ORTIZ, COUCH and the other RPD officers were acting pursuant to the custom, practice, and/or policy of subjecting individuals to "contempt of cop" arrests when the seized and arrested Assemblyman Meeks in retaliation for him video recording them perform their duties in a public place.

134.    The RPD's practice of tolerating and condoning its officers retaliate against individuals for lawfully video recording them performing their duties in public caused ORTIZ, COUCH and the other RPD officers to unlawfully seize, assault, batter and falsely arrest Assemblyman Meeks.

135.    As a result, Assemblyman Meeks sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

136.    Accordingly, Assemblyman Meeks demands judgment against Defendants in a sum of money to be determined at trial.

**WHEREFORE** and in light of the foregoing, Plaintiff demands judgment on all claims for relief:

a.    Empanel a jury;

b.    Award compensatory and punitive damages;

c.    The Plaintiff demands the foregoing relief jointly and severally against all of the Defendants in an amount in excess of the jurisdiction of all lower Courts, except that the punitive damages demands are, as a matter of law, not recoverable against a municipality and therefore are not made against the City;

d.    Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

 

 

e.  Award costs and attorney's fees pursuant to New York Civil Rights Law § 79-p(3)(d); and

f.  Such other and further relief as the court may deem just and proper.

Dated: New York, New York        Respectfully Submitted,
        December 8, 2021

ROTH & ROTH, LLP.

Elliot Dolby Shields
Co-counsel for Plaintiffs
192 Lexington Avenue, Suite 802
New York, New York 10024
(212) 425-1020

Easton Thompson Kasperek Shiffrin LLP
Donald Thompson
Co-counsel for Plaintiffs
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290

## ATTORNEY'S VERIFICATION

**ELLIOT DOLBY SHIELDS,** an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am associated with Roth & Roth, LLP, attorneys for the Plaintiff, I have read the annexed **VERIFIED COMPLAINT** and know the contents thereof, based on the files maintained in my office, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files. This verification is made by me and not the Plaintiff because I maintain my office in a different county from where the Plaintiff resides.

DATED: New York, New York
          September 8, 2021

ELLIOT DOLBY SHIELDS

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** MONROE
-------------------------------------------------------------------x
DEMOND MEEKS

<div style="text-align:center">Plaintiff/Petitioner,</div>

- against -                                                    Index No. E2021010968

THE CITY OF ROCHESTER, a municipal entity, ALEXIS ORTIZ, TYLER
COUCH, "JOHN DOE POLICE OFFICERS 1-200" (names and number of
whom are unknown at present),

<div style="text-align:center">Defendant/Respondent.</div>
-------------------------------------------------------------------x

<div style="text-align:center">

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

</div>

**You have received this Notice because**:

    1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **<u>If you are represented by an attorney</u>:**
  Give this Notice to your attorney.  (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **<u>If you are not represented by an attorney</u>:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **<u>If</u> you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: **www.nycourts.gov/efile-unrepresented** or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at **www.nycourts.gov**

<div style="text-align:center">Page 1 of 2                                                    EFM-1</div>

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated:   December 10, 2021

**Elliot Dolby Shields**

Name

Roth & Roth, LLP

Firm Name

192 Lexington Avenue, Suite 802

New York, NY 10016

Address

(212) 425 - 1020

Phone

aroth@rothandrothlaw.com

E-Mail

To:   City of Rochester et al.

6/6/18